IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE J. WESTERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 05-999 |
| | ) |
| GENERAL NUTRITION CORPORATION, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

In this civil action, Plaintiff, formerly employed by Defendant General Nutrition Corporation ("GNC"), avers that GNC retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1). She also asserts claims for breach of a settlement agreement between the parties, and for violations of Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. C.S.A. § 260.3. In essence, Plaintiff avers that following resolution of initial complaints regarding gender discrimination and subsequent retaliation therefor, she suffered further retaliation and was fired because of her age.

Defendant has moved for summary judgment on all claims against it. For the following reasons, Defendant's Motion will be granted in part and denied in part.

**OPINION**

I. **FACTS**

Unless otherwise noted, the following facts are undisputed. Plaintiff was hired by Defendant on February 29, 1988. During her time there, she served in a variety of positions. Her most recent title was Director, Print & Production.[1]

On September 26, 1997, Plaintiff filed a charge of discrimination against Defendant with the EEOC. She then filed an action in this Court, at Docket No. 98-1022 ("Westerman I"). In both filings, Plaintiff alleged gender discrimination in violation of Title VII, and retaliation with respect to her complaints of gender discrimination.

Her supervisor at the time, Joe Bresse, was demoted and transferred in part as the result of her complaints; later, he was returned to Pittsburgh and became Plaintiff's supervisor again.

After extensive negotiation regarding the terms of a settlement, Plaintiff signed an agreement settling Westerman I.[2] Under cover of letter dated November 11, 2003, Plaintiff submitted the signed agreement to Defendant. This Court marked the matter closed on May 1, 2001, after being informed by counsel that a settlement had been reached. Defendant then returned a fully executed copy of the agreement to Plaintiff under cover of letter dated May 7, 2004. The date that

---

[1]Plaintiff avers that her title was different, but cites only to the allegation in her Complaint. This is not a sufficient "fact" to create a dispute.

[2]It is unclear whether Plaintiff intends to deny that she signed the agreement on February 8, 2003.

Defendant signed the agreement is not of record. Plaintiff was represented by counsel when the release was signed, and she was not under any duress when she executed the document.

The agreement provides that it "is entered into this 8th day of February, 2003, by and between [Plaintiff and Defendant]." It further provides that the agreement "shall not become effective or enforceable until the eighth (8th) day after the date of its execution." Plaintiff was represented by counsel when she signed the agreement. As part of their contract, the parties agreed to conduct an arbitration to address various matters concerning Plaintiff's compensation for certain times during her employment. Moreover, Plaintiff agreed to release Defendant from all claims relating to her employment with Defendant, prior to "the date of this Settlement Agreement and Release of All Claims." There are no dates, or spaces left for dates, at or near the parties' signature lines.

The agreement further provides as follows:

> Regardless of the final award of the arbitration panel, [the parties- agree that:
> (b). GNI...shall not retaliate against Westerman;
> 
> (c). Westerman's position shall be redescribed, reevaluated, and revised to reflect all of her duties and responsibilities with an appropriate grade level....
> 
> (d). GNI will issue a "recognition of services" letter...for inclusion in Westerman's personnel file....
> 
> (e). Ms Westerman's title shall be enhanced...regardless of the outcome of the

>
> neutrals' evaluation;
>
> (g). Ms Westerman shall be provided a complete, inclusive and accurate copy of her personnel files when this Agreement is executed and shall be permitted to retain said files.

Although Defendant sent Plaintiff drafts of a recognition of services letter, no such letter was placed in Plaintiff's personnel file. The personnel file was not provided to Plaintiff prior to discovery in this litigation. Plaintiff's title and position were not redescribed or enhanced.

Plaintiff asserts that the arbitration was conducted on January 5, 2005. Defendant cites to testimony by Plaintiff to the effect that it was conducted on January 5, 2004. The arbitration panel found that Plaintiff had been fairly compensated for her employment for the years 1995 through 2003, and that she functioned as Packaging Professional in the area of Corporate Management. The panel's decision is dated August 8, 2005.

On May 11, 2004, GNC announced its decision to outsource the entirety of Plaintiff's department to Blattner Brunner, a local marketing firm that had worked with GNC in the past. Blattner Brunner had conducted an audit of the department. The audit was, in part, about wanting a "fresh look." The audit advised that an annual savings of between $300,00 and $400,000 could be realized if Plaintiff's department was eliminated. Plaintiff avers that the audit was skewed, because of various financial benefits that would inure to Blattner Brunner, in that the audit was proposed by Blattner Brunner because it wanted to obtain Defendant's business,

and because of the relative inexperience of one of the auditors. The audit was dated May 3, 2004.

There is some conflict with respect to who made the decision to outsource the Plaintiff's department. Defendant avers that Joe Bresse was involved in the decision, and Plaintiff avers that the decision was made by Joe Mancini. Five people were in Plaintiff's department when it was outsourced. Three of them went to work for Blattner Brunner following the outsourcing, and one was reassigned within GNC. Bresse made the decision to ask Blattner Brunner to interview and hire three employees from the department, and also made the decision not to request that Plaintiff be considered. Further, he did not consider Plaintiff for any other position at GNC, including a packaging manager position created after the outsourcing.

Some duties previously performed by Plaintiff were, after the outsourcing, being performed by Jennifer Foster, who was promoted to the position of Director Creative Advertising and Production, at age thirty-two. Steven Nelson promoted Ms. Foster to that position. Ms. Foster does not perform Plaintiff's previous budgeting responsibilities.

Plaintiff had been told, by Defendant's president, that Bresse "had a tendency to be retaliatory." During a conversation with Plaintiff, Bresse made reference to her legal issues with Defendant. Other employees told Plaintiff that Bresse was out to get her and was making things harder for her. Plaintiff does not know whether those individuals were speculating. Bresse gave her unreasonable deadlines for work and caused her to do double the work to get the information

5

she needed to properly perform tasks. She was also excluded from meetings, which made her job more difficult. Plaintiff did not receive her annual evaluation, which was due on February 28, 2004. During the period in which Plaintiff claims retaliation took place, she received pay raises, her title remained the same, and no perquisites of employment were taken from her.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. V. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

## III. DEFENDANT'S MOTION

### A. Release of Liability

First, in order to establish the chronological parameters of this matter, I

address Defendant's argument that the release included in the parties' settlement agreement precludes Plaintiff from maintaining a cause of action for any retaliation alleged to have occurred prior to February 8, 2003.  Defendant argues that a release is effective when signed by the releasing party;  Plaintiff argues that the settlement agreement, as a bilateral contract, was effective when signed by both parties.  The signing of the document, however, is not necessarily the legally operative event here.

> The law ...makes clear that a contract is created where there is mutual assent to the terms of a contract by the parties with the capacity to contract."If the parties agree upon essential terms and intend them to be binding, 'a contract is formed even though they intend to adopt a formal document with additional terms at a later date.'" As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties.

Shovel Transfer & Storage v. Pennsylvania Liquor Control Bd., 559 Pa. 56, 62-63 (Pa. 1999) (citations omitted).

Moreover, "[T]he mere presence of signature lines does not determine whether the parties intended to be bound only upon the execution of the document by all the signatories. Instead, the inquiry is properly directed to whether the parties agreed to the terms in question and intended to be bound by the terms of the contract." Id. at 66.  In addition, of course, parties to a contract may, at their option, fix an effective date.  Bierer v. Nationwide Ins., 461 A.2d 216, 220 (Pa. Super. 1983).

In this matter, there is no dispute that the parties mutually assented to the

terms of the contract at some point prior to signing, after negotiation and consultation with counsel.  Plaintiff points to no evidence, in the document or otherwise, that the parties intended signatures to render the contract effective.  Instead, the plain language of the agreement states that it was entered into on a particular date, and Plaintiff proffers no reason to disregard that date.  The plain language of the agreement further states that Plaintiff releases all claims arising prior to "the date of" the agreement – i.e., February 8, 2003.  There is no evidence that the parties intended to attach any other condition to the enforceability of their promises.  Therefore, I agree with Defendant that the agreement precludes Plaintiff from bringing suit for conduct occurring prior to February 8, 2003.[3]

Plaintiff, however, mentions that Defendant breached the agreement, and cannot therefore rely on her release.   Indeed, the agreement specifically contemplates mutual promises, many of which Plaintiff avers were broken.  "[A] material breach by one party to a contract entitles the non-breaching party to suspend performance."  Widmer Eng'g, Inc. v. Dufalla, 837 A. 2d 459, 467 (Pa. Super. 2003).  As a corollary, a non-material breach does not permit the suspension of performance.  Assessing materiality requires me to weigh a variety of factors and

---

[3]I note that neither party discusses the eight-day contractual "grace period," and that the time between February 8 and 16, 2003, does not appear significant with respect to Plaintiff's claims. For that reason, and because neither party refers to the latter date, I will rely only on the former. Plaintiff may, however, proceed with her claims arising after that date.  In this matter she "is not attempting to bring before this Court the claim which she had earlier agreed to settle…[instead, she] is asserting a new claim, also based on discrimination grounds, for breach of settlement agreement."  Pinkston-Adams v. Nike, Inc., No 99cv1044, 1999 U.S. Dist.  LEXIS 11342, at *6(N.D. Ill. July 21, 1999)

Moreover, although Plaintiff cannot base a cause of action on conduct occurring prior to the release, my ruling does not necessarily mean that evidence of such conduct would be inadmissible at trial.

circumstances. Gray v. Gray, 671 A.2d 1166, 1172 (1996); Restatement (Second) of Contracts § 241 (1981). Based on the present record, and the parties' superficial cross-assertions regarding materiality, I am unable to assess those factors and render an appropriate determination. Accordingly, at this juncture, the plain language of the agreement will stand.

**B. Age Discrimination**

I now address Defendant's challenge to Plaintiff's age discrimination claim. I will assume, for present purposes, that Plaintiff has made a prima facie case under the ADEA.[4] At this point, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). The employer satisfies its burden of production by introducing evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 125 L. Ed. 2d 407, 113 S. Ct. 2742, 2748 (1993). The employer need not prove that the tendered reason actually motivated its

---

[4] With respect to her prima facie case, Defendant points to the fact that Plaintiff was not replaced by any other employee; instead, her entire department was outsourced. In this type of case, however, the prima facie test is modified by allowing the Plaintiff to show that older employees were fired while younger ones in similar positions were retained. Greene v. Safeway Stores, Inc., 98 F.3d 554 (10th Cir. 1996); see also Anderson v. Conrail, 297 F.3d 242, 249 3rd Cir 2002).
Plaintiff has produced evidence that a thirty-two year old woman was promoted to the position of Director, Creative Advertising and Production, in 2005; and that she performs several of the duties previously performed by Plaintiff. I am without information or argument, however sufficient to permit me to compare the positions. For example, I am without information regarding the primary functions of Plaintiff's and Foster's positions. See e.g. Gilkey v. Siemens Energy & Automation, Inc., 125 Fed. Appx. 908 (10th Cir. 2005). In any event, because the pretext analysis disposes of Plaintiff's claim, I need to conclusively address the similarity of Plaintiff's and Foster's jobs.

9

behavior, because the ultimate burden of proving intentional discrimination always rests with the plaintiff. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). I must accept a defendant's proffer without measuring its credibility. Hicks, 509 U.S. at 509.

Once the employer meets its relatively light burden, the burden of production returns to the plaintiff, who must show that the employer's explanation is pretextual. McDonnell Douglas, 411 U.S. at 803. The court may consider the sum or totality of the evidence presented in determining whether the plaintiff has established pretext. Futrell v. J.I. Case, 38 F.3d 342, 346 (7th Cir. 1994). Plaintiff may do this by pointing to "some evidence, direct or circumstantial, from which a factfinder could either 1) disbelieve the employer's articulated reasons; or 2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Iadimarco v. Runyon, 190 F. 3d 151, 166 (3d Cir. 1999).

More specifically, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proferred [sic] legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Evans v. Pennsylvania Power & Light Co., 98 Fed. Appx. 151, 155 (3d Cir. 2004). "In simpler terms, the plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, 130 F.3d 1101, 1111 (3d Cir. 1997). Additionally, "if the aggrieved

employee can raise evidence sufficient 'to discredit the [employer's] proffered reasons...the [employee] need not also come forward with additional evidence of discrimination beyond his . . . prima facie case' in order to survive summary judgment." Fasold v. Justice, 409 F.3d 178, 185 (3d Cir. 2005).[5]

Defendant has proffered that the decision to outsource Plaintiff's department–and by extension, to terminate Plaintiff, was a cost-cutting measure. It is undisputed that the audit reported that eliminating Plaintiff's department would result in an annual savings of between $300,00 and $400,000 for Defendant. This is, unquestionably, a legitimate reason for Defendant's actions; Defendant has met its burden of production.  I move, therefore, to the alleged deficiencies in Plaintiff's evidence of pretext.

I agree with Defendant that Plaintiff fails, initially, to sufficiently call into question its legitimate reason for outsourcing her department.  Relevant here, I note that neither Title VII nor the ADEA prohibit employment decisions based on personal animosity or a poor working relationship. See Gharzouzi v. Northwestern Human Servs. of Pa., 225 F. Supp. 2d 514, 534 (E.D. Pa. 2002).  Neither statute is "a civility code nor a statute making actionable the ordinary tribulations of the workplace." See Davis v. City of Lake Park, Fla., 245 F. 3d 1232, 1238 (11th Cir. 2001). Plaintiff alleges that the outsourcing decision, and her termination, was made by

---

[5] It does not appear that Plaintiff intends to assert an independent "failure to rehire" claim based on Bresse's failure to consider her for a new position within GNC.  She does not, for example, aver that she applied for or requested reassignment or a different position.  See, e.g., Thankachen v. Cardone, No. 95-CV-0181, 1996 U.S. Dist. LEXIS 2156, at *16 n.9  (E.D. Pa. Feb. 27, 1996).  I consider the failure to reassign, rehire, or recommend, then, only in its evidentiary role.

Lou Mancini. Bresse's malicious activities, therefore, would not throw into question the Defendant's reliance on the audit. Similarly, Blattner Brunner's financial interest in the outcome of the audit, or the inexperience of one of the auditors, does not render Defendant's reliance thereon incredible.

Additionally, Plaintiff's evidence specifically related to age is too tenuous to alter my conclusion. The mere fact that a younger person was retained to perform some – and admittedly not all -- of the duties that Plaintiff previously performed does not raise an inference of age discrimination. See Prestileo v. Sears, Roebuck & Co., No. 99-2180, 2000 U.S. Dist. LEXIS 1150, at *13 (E.D. Pa. Feb. 2, 2000). Moreover, Plaintiff produces unadorned evidence that "shortly prior to" her termination, "other employees over forty were terminated." This information, taken as true, simply cannot create a genuine issue of material fact. There is no evidence, for example, regarding the circumstances surrounding those terminations, whether younger employees were also terminated, or whether older employees were retained. Lastly, Plaintiff proffers the fact that Defendant desired a "fresh" approach or look in its packaging. Mere use of the term "fresh" bears "such a vague and attenuated relationship to discriminatory animus" that it is insufficient to preclude judgment as a matter of law. Hill v. Bethlehem Steel Corp., Nos. 87-7763, 87-7764, 1989 U.S. Dist. LEXIS 6368, at *8 (E.D. Pa. June 6, 1989).

In sum, Plaintiff simply has not succeeded in discrediting Defendant's explanation for the outsourcing; nor has she adduced evidence that her age was more than likely a motivating factor in the decision. There is no genuine issue of

material fact on that claim, and Defendant is entitled to judgment as a matter of law. Therefore, I will enter judgment against Plaintiff on her claim for age discrimination.

## C. Retaliation

I next address Defendant's Motion for judgment on Plaintiff's retaliation claim. As part of a prima facie case for retaliation under Title VII, a plaintiff must establish that she engaged in protected activity, and also show a causal connection between the retaliatory conduct and the protected activity. Defendant argues that the six- or seven-year gap between Plaintiff's initial EEOC and court complaints and her discharge, as well as the unprotected nature of the act of settling litigation, undermines the causal connection; they seem, additionally, to suggest that the passage of time is fatal to her claim. Our Court of Appeals has held, however, that the passage of time alone is not, as a matter of law, conclusive proof against retaliation. Sarullo v. United States Postal Serv., 352 F.3d 789, 801 (3d Cir. 2003). It is possible, too, that the close temporal proximity of the audit, Defendant's transmission of the settlement agreement to Plaintiff, and the termination is significant. Therefore, the manner in which the time lapse affects her claim is for the trier of fact to assess.

I think it error, moreover, to isolate the Plaintiff's 1997 and 1998 filings from the surrounding circumstances. In other words, I am unwilling to find that all protected activity ceased when the EEOC charge or court complaint was filed. Instead, ongoing participation in and prosecution of such matters are protected.

See 42 U.S.C.S § 2000e-3.  As defendant observes, "participating in any manner in...a proceeding" under Title VII, as well as opposing an unlawful practice, is deemed protected.  It would make little sense to leave wholly unprotected an employee's participation in the settlement of such a proceeding, and related negotiations, particularly when the settlement agreement itself imposes on Defendant an obligation to refrain from future unlawful practices.  See, e.g., Wise v. Overhead Door Corp., No. 1:04-CV-2972-RWS, 2006 U.S. Dist. LEXIS 13026, at **62-64 (N.D. Ga. Jan. 17, 2006); Sprott v. Franco, No. 94 Civ. 3818, 1997 U.S. Dist. LEXIS 1935, at *40 (S.D.N.Y Feb. 25, 1997).[6]  The chronological facts, therefore, cannot be deemed fatal to Plaintiff's case.

Having determined that the prima facie burden is met, Plaintiff's Title VII retaliation claim follows the same burden-shifting analysis applicable to her ADEA claim.  Dawley v. Erie Indem. Co., 100 Fed. Appx. 877, 880 (3d Cir. 2004).  I have already determined that Defendant has met its burden of production regarding Plaintiff's discharge, and that Plaintiff has not discredited Defendant's legitimate explanation. Plaintiff's claim for retaliation, however, is not limited to her termination. Instead, it specifically encompasses, for example, Bresse's conduct from the time of the Westerman I settlement until her discharge.   Were the sum total of the evidence that Bresse treated her unkindly, even in numerous ways, I might be  inclined to

---

[6]In Johankin v. Philadelphia, No. 95-1558, 1997 U.S. Dist. LEXIS 9189 (E.D. Pa. June 27, 1997), to which Defendant points, the Court declined to consider the EEOC's final determination  --  conduct by the EEOC alone  --  as protected activity.  Similarly, I would not here consider the date that the arbitrators issued their award, or the date that this Court closed Westerman I, as Plaintiff's protected activity.

view it as personal animosity, not subject to legal redress. However, for example, the President of the company advised Plaintiff that Bresse "had a tendency to be retaliatory" and would be watched. This statement, which Defendant fails to counter, undoubtedly raises at least the specter of illegal motivation. It lends a legally significant gloss to Bresse's ongoing treatment of Plaintiff, his reference to her legal issues with Defendant, and the timing of her discharge.

"A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." Andrews v. City of Phila., 895 F.2d 1469, 1484 (3d Cir. 1990). Taking the evidence and all reasonable inferences therefrom in the light most favorable to Plaintiff, I am unwilling to enter judgment against her in this regard. A reasonable jury could find that retaliation was more likely than not a motivating or determinative cause of Plaintiff's negative treatment. Therefore, I will not enter judgment on Plaintiff's retaliation claim.

### D. Breach of Contract

Next, I address Defendant's Motion regarding Plaintiff's claims for breach of the parties' settlement agreement. Defendant asserts that it is entitled to judgment on that claim because it performed or was not obligated to perform certain duties outlined in the settlement agreement. For example, Defendant argues that it was not required to revise Plaintiff's job title, because the arbitration panel found that she had been overpaid during certain years of her employment. However, the settlement agreement specifically provides that Plaintiff's position was to be

15

redescribed and revised regardless of the arbitration award. At a minimum, judgment is inappropriate on the breach of contract claim for that reason. I will deny Defendant's Motion with respect to breach of contract.

### E. Wage Payment and Collection Law

Finally, I address Defendant's argument that it is entitled to judgment on Plaintiff's WPCL claim because she was a director level employee at the time of her termination, and was therefore not entitled to "carry over" vacation time. Plaintiff, in turn, claims entitlement to two days of accrued vacation, and to carry-over sick days. Each party urges that a different policy was applicable to Plaintiff. They do not, however, provide me with argument or information sufficient to render such a determination as a matter of law. I will, therefore, deny Defendant's Motion on the WPCL claim.

### CONCLUSION

In conclusion, I will deny Defendant's Motion for Summary Judgment in part, and grant it in part. The Motion will be granted to the extent that Plaintiff cannot state any claim against Defendant for conduct occurring prior to February 8, 2003, and cannot pursue her claim for age discrimination. I will deny the Motion in all other respects, as either genuine issues of material fact remain, or the Court was without information sufficient to permit the decisive determination required.

An appropriate Order follows.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **ORDER OF COURT**

AND NOW, this **30th** day of January, 2007, it is ORDERED that Defendant's Motion for Summary Judgment (Docket No.27 ) is GRANTED in part and DENIED in part. Judgment is entered in favor of Defendant on all causes of action based on conduct occurring prior to February 8, 2003, and on Plaintiff's ADEA claim. The Motion is DENIED in all other respects.

It is further Ordered that a Pre-Trial Settlement Conference is scheduled for Monday, February 5, 2007, at 10:15 A.M. before the undersigned on the Third Floor, Suite 3280 of the U.S. Post Office & Courthouse. Counsel shall have settlement authority and parties are to be either present or available by telephone. Position letters are to be faxed three (3) days prior to the Conference.

BY THE COURT:


/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge